**FILED**
CLERK, U.S. DISTRICT COURT

3/28/2017

CENTRAL DISTRICT OF CALIFORNIA
BY: _____GR_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RANDAL RUIZ, | Case No. CV 14-8693 PA (RAO) |
| Petitioner, | |
| v. | FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| SCOTT FRAUENHEIM,[1] Warden, | |
| Respondent. | |

This Final Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[2]

///

///

---

[1] Petitioner is currently incarcerated at the Pleasant Valley State Prison in Coalinga, California. Scott Frauenheim is the current custodian at that prison and, accordingly, is substituted as the Respondent herein. *See* Fed.R.Civ.P. 25(d).

[2] This Final Report and Recommendation is issued to include the procedural history regarding Respondent's Motion to Dismiss and Petitioner's opposition thereto. No other changes or additions have been made to the Court's Report and Recommendation issued on October 21, 2016.

**I.     INTRODUCTION**

In 2012, a jury in the Los Angeles County Superior Court convicted Randal Ruiz ("Petitioner") of first degree burglary and second degree burglary. (Clerk's Transcript ("CT") 1069-70.) After determining that Petitioner had served two prior prison terms and had seven prior "strikes" under California's Three Strikes law, the trial court sentenced him to two concurrent 35 years-to-life terms in prison. (CT 1105-07, 1261-65.)

Petitioner appealed to the California Court of Appeal, and his appointed counsel filed a brief pursuant to *People v. Wende*, 25 Cal.3d 436 (1979), informing the court that there were no non-frivolous issues to raise and requesting that the appellate court independently review the record for arguable issues. (*See* Lodg. No. 3 at 2.) After being informed by the Court of Appeal that he could, on his own, submit any claims he wished the court to consider, Petitioner filed two letter briefs, but both were untimely. (Lodg. Nos. 4-5.) Thereafter, the California Court of Appeal issued an Order stating that it had reviewed the record, pursuant to *People v. Wende*, and was satisfied that no arguable issues existed and affirmed the judgment. (Lodg. No. 3 at 7-9.) The appellate court also noted that even if it had considered the "multitude of contentions" raised in Petitioner's untimely letter briefs, it would not have resulted in reversal of his conviction. (Lodg. No. 3 at 7.)

Petitioner did not file a petition for review in the California Supreme Court. Instead, he filed a habeas corpus petition in the California Court of Appeal, which was denied both on procedural grounds and on the merits. (*See* Lodg. Nos. 6-7.) Thereafter, he filed a habeas corpus petition in the California Supreme Court, which was denied summarily in February 2014. (Lodg. Nos. 10-11.) A second habeas petition filed in the California Supreme Court was also denied without comment in January 2015. (Lodg. Nos. 8-9.)

On November 10, 2014, Petitioner, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"), pursuant to 28

2

U.S.C. § 2254.  On April 7, 2015, Respondent filed a Motion to Dismiss.  Petitioner filed a traverse in response to the motion on June 3, 2015, and a supplement to the traverse on August 10, 2015.   The Court denied the Motion to Dismiss on February 2, 2016, and directed Respondent to file an answer.  Thereafter, on May 12, 2016, Respondent filed an Answer to the Petition and a supporting memorandum ("Answer").  Respondent also lodged the relevant state records.  Petitioner filed a Traverse on September 28, 2016.

## II.   PETITIONER'S CLAIMS

The Petition raises five grounds for relief, as follows:

1.     The Petition should be stayed and abeyed until the California Supreme Court rules on his pending state petition in case no. S222172.

2.     The trial court violated his constitutional rights by forcing him, while acting in pro per, to "forfeit his right to listen and participate in sidebars."

3.     The California Court of Appeal's ambiguous order denying his habeas petition in case no. B256211 does not constitute an adequate and independent procedural bar.

4.     Trial counsel was ineffective for failing to challenge the validity of his prior "strike" convictions.

5.     Appellate counsel was ineffective for failing to raise on appeal the issue of trial counsel's ineffectiveness in not contesting the validity of Petitioner's prior "strike' convictions.

(Petition at 5-7.)

///

///

///

///

///

///

3

### III.   **FACTUAL SUMMARY**[3]

On October 23, 2009, Stephen Biskup was staying in a guesthouse located behind the main house in Pasadena.   There was a storage shed behind the guesthouse.   That morning, between 7:00 and 8:00 a.m., Biskup "looked out on the porch to the backyard" and noticed that the gate to the yard, which had been closed the night before, was "slightly open."   Biskup went out to the gate and saw a man with a backpack on a bicycle.   Biskup did not know the man, who said "Hi" and then "took off on the bike."   Biskup told a Sheriff's deputy what he had witnessed.

Mary Ann Shemdin owned two homes on a lot in Pasadena.   Each of the homes had a two car garage with a carport, and there was a storage shed at the back of the lot.   Shemdin lived in one of the homes and a male lived in the second one.

On the morning of October 23, 2009, the man who lived in the second house contacted Shemdin about something that had occurred in the storage shed at the back of the lot.   Afterwards, Shemdin inspected the storage shed and found the door, which was always locked, and a window open.   The shed, which had been full of furniture, Christmas decorations, files, and boxes containing her daughter's possessions, had been "ransacked."   Shemdin could see that "things [in the shed] had been gone through," and several items in the shed had been moved or altered.

Shemdin called the Sheriff's Department to file a police report.   While she was giving the report, a City of Pasadena police officer arrived and asked Shemdin if she knew a Marie St. Claire.   When Shemdin told the officer that St. Claire was her daughter who had moved out of state, the officer asked her if she would recognize her computer.   A few days later, Shemdin went to the Pasadena Police

///

---

[3]   The factual summary set forth in this section is drawn from the California Court of Appeal's decision on direct appeal.  (Lodg. No. 3 at 2-6.)  Because Petitioner has not rebutted these facts with clear and convincing evidence, they are presumed to be correct.  28 U.S.C. § 2254(e)(1).

1    Department and identified her daughter's computer, which had been in the storage
2    shed along with her daughter's other possessions.

3         On October 23, 2009, Angele Ajamian resided in Pasadena.  Her neighbor,
4    Mary Ann Shemdin, lived next door. That morning between 7:00 and 8:00 a.m.,
5    Ajamian was in her family room watching the news.  From her window, she saw a
6    man with a backpack going toward a rental house in the back of the property.  The
7    man left a bicycle and stood behind a big tree.  Ajamian opened the door and asked,
8    "Can I help you?"  The man replied, "I'm looking for Hector."  Ajamian said,
9    "There is no Hector here," and the man "took his bike and left."  A few days later,
10   police officers showed Ajamian a photo lineup and she identified Petitioner's
11   photograph as the man she saw in her backyard.  Ajamian also identified Petitioner
12   in court as the man she saw on October 23rd.

13        On the morning of October 23, 2009, Frank Greer was working in his home
14   office at his residence in Pasadena.  His office was adjacent to the laundry room in
15   his garage and connected to the laundry room by a door. The laundry room could
16   also be accessed through the garage by another door.  At approximately 9:30 a.m.,
17   Greer heard a noise in the laundry room and looked up, but did not see anything.
18   When he heard another noise from the laundry room, he looked up again and saw
19   the silhouette of a man through the sheer white curtain on the door to the laundry
20   room.  Greer, who was expecting his wife, not a man, saw the male silhouette touch
21   the door knob and heard the knob "kind of turn a little bit."  Greer then said,
22   "Hello," which caused the man to "sort of [freeze]" and then leave.  Greer went to
23   investigate and when he got outside, he saw Petitioner, wearing a bandana and a
24   backpack, trying to free a bicycle that was entangled in some mesh netting in a
25   tomato garden.  After Petitioner freed the bicycle and moved it into the driveway,
26   he said, "I was just looking for Hector."  Petitioner then mounted his bicycle and
27   rode away.
28   ///

5

Greer called 911 and provided a description of the intruder. When a police officer responded, he told Greer that the police had found someone who matched the description Greer had provided to the 911 operator. The officer transported Greer to the location where a suspect had been detained and Greer was able to positively identify the man as the person he had seen at his house that morning. Greer also identified Petitioner in court as the man with the bicycle that he saw in his driveway.

On October 23, 2009, City of Pasadena Police Officer Roxanne Bevel was working patrol with her partner Officer Burchett. Shortly after 9:30 a.m., she received a radio broadcast regarding a burglary. While responding to the scene of the burglary, the officers observed a male on a bicycle "who had a light gray covering over his head, [that] later was identified as a long-sleeved shirt." The man generally fit the description of the burglary suspect that the officers were provided in the dispatch broadcast. Officer Bevel identified Petitioner in court as the man they observed that morning.

When the officers approached Petitioner, Officer Bevel noticed that he had a backpack on his back and was carrying a green bag. The officers recovered a "Radio Shack golf scope" and screwdriver from his rear pockets and black and purple gloves from his front pants pocket. Petitioner had a screwdriver, allen wrenches, bolt cutters, and various tools, along with a couple of watches and other items, inside his backpack. Inside the green bag, Officer Burchett recovered a blue and silver laptop and other items. Petitioner was also carrying jewelry, including six rings, hoop earrings, three bracelets, a pendant, and a chain, as well as a bicycle repair kit.

After arresting Petitioner, Officer Burchett assisted Officer Bevel in searching Petitioner and inventorying all the items that the officers recovered from him. When Officer Burchett powered on the laptop computer Petitioner had in his

///

6

green bag, he found a resume with a name, Marie St. Claire, and a Pasadena address that matched Mary Ann Shemdin's address.

City of Pasadena Detective Richard Pippin investigated the burglary of the storage shed on Shemdin's property. As part of the investigation, he spoke to Shemdin and showed her items that were booked into evidence as a result of Petitioner's arrest. Shemdin identified the computer as belonging to her daughter, but none of the other items. Detective Pippin also showed Ajamian a six-pack photo lineup. Ajamian identified the photograph of Petitioner in that lineup.

In his defense, Petitioner called an eyewitness identification expert to testify about various issues with the reliability of eyewitness identifications.

## IV.   <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). In particular, this Court may grant habeas relief only if the state court adjudication was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or was based upon an unreasonable determination of the facts. *Id.* at 100 (citing 28 U.S.C. § 2254(d)). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (internal citation and quotations omitted).

A state court's decision is "contrary to" clearly established federal law if: (1) the state court applies a rule that contradicts governing Supreme Court law; or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but nevertheless arrives at a result that is different from the Supreme Court precedent. *See Lockyer v. Andrade*, 538 U.S. 63, 73, 123

S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court need not cite or even be aware of the controlling Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

A state court's decision is based upon an "unreasonable application" of clearly established federal law if it applies the correct governing Supreme Court law but unreasonably applies it to the facts of the prisoner's case.  *Williams*, 529 U.S. at 412-13.  A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be *unreasonable*."  *Id.* at 411 (emphasis added).

In determining whether a state court decision was based on an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2), such a decision is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L.Ed.2d 738 (2010).  The "unreasonable determination of the facts" standard may be met where: (1) the state court's findings of fact "were not supported by substantial evidence in the state court record"; or (2) the fact-finding process was deficient in some material way.  *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (citing *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004)).

In applying these standards, a federal habeas court looks to the "last reasoned decision" from a lower state court to determine the rationale for the state courts' denial of the claim.  *See Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).  There is a presumption that a claim that has been silently denied by a state court was "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d),

and that AEDPA's deferential standard of review therefore applies, in the absence of any indication or state-law procedural principle to the contrary.  *See Johnson v. Williams*, ___ U.S. ____, 133 S.Ct. 1088, 1094, 185 L.Ed.2d 105 (2013) (citing *Richter*, 562 U.S. at 99).

Here, Petitioner did not present his claims to the California Supreme Court on direct review.  Instead, he raised his claims in two separate habeas corpus petitions in the California Supreme Court, both of which were denied without comment or citation.[4]  (*See* Lodg. Nos. 9, 11.)  Because no reasoned state court decision exists as to the denial of Petitioner's claims, this Court must conduct an independent review of the record to determine whether the California Supreme Court was objectively unreasonable in applying controlling federal law.  *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013).  Although the federal habeas court independently reviews the record, it must "still defer to the state court's ultimate decision."  *Libberton v. Ryan*, 583 F.3d 1147, 1161 (9th Cir. 2009) (internal quotations and citation omitted).

## V.   DISCUSSION

### A.   Ground One:  Stay and Abey Request

In Ground One, Petitioner states that he is filing a "protective petition" and asks the Court for a stay and abeyance until the California Supreme Court rules on his pending state petition (case no. S222172).[5]  (Petition at 5.)  In January 2015, before the Court had an opportunity to rule on Petitioner's request, the California Supreme Court entered its order denying the state habeas petition.  (*See* Lodg. No. 9.)  As such, Petitioner's request for a stay and abeyance is moot.  *See, e.g., Hall v. Biter*, 2012 WL 2373373, at *2 (C.D. Cal. May 16, 2012) (noting that the "denial of

---

[4] The California Court of Appeal also denied Petitioner's claims in perfunctory fashion.  (*See* Lodg. No. 7.)

[5] That state petition raised the corresponding claims in Grounds Three through Five herein.

petitioner's California Supreme Court habeas petition technically rendered moot petitioner's stay-and-abeyance request"); *Hampton v. McDonald*, 2011 WL 5508923, at *2 (E.D. Cal. Nov. 8, 2011) (finding petitioner's motion for stay and abeyance had been "rendered moot by the California Supreme Court's denial of his exhaustion petition").

Because there is no further relief that this Court can provide to Petitioner in his efforts to exhaust his pending claims, no "case or controversy" exists and the claim must be denied as moot. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."); *Munoz v. Rowland*, 104 F.3d 1096, 1097-98 (9th Cir. 1997) (finding habeas petition moot when it no longer involves a live case or controversy and the court cannot provide the primary relief sought in the petition).

### B.   Ground Two: *Faretta* Violation

In Ground Two, Petitioner contends that, while representing himself at trial, he was "forced to forfeit his right to listen and participate in sidebars" with the court. (Petition at 5.)  He argues that the trial court's refusal to make reasonable accommodations forced him to have to delegate those responsibilities to counsel, who was assisting him at trial, in violation of his constitutional rights. (Petition at 5-6.)

#### 1.   *Background*

Petitioner elected to represent himself during the preliminary hearing. (CT 1-96.)   Afterwards, the court appointed standby counsel to assist with court proceedings. (CT 129.)  During pre-trial motions, Petitioner asked if he could have standby counsel assist him with the "presentation of evidence and cross-examining witnesses." (Reporter's Transcript ("RT") I9.)  He also said he wanted to "look into" the idea of having standby counsel "take over the case." (RT I9.)  He

///

10

expressed concerns, however, with "giv[ing] up [his] pro per status."  (RT I10.)
The trial court agreed to consider such an arrangement at a later date.  (RT I10.)

At a hearing just prior to the start of trial, the court inquired whether Petitioner wanted standby counsel to represent him as his attorney.  (RT 2, 24.) Petitioner requested that he continue his pro per status, but that standby counsel be allowed to act as co-counsel for him.[6]  (RT 24.)   Standby counsel indicated that he would be the "voice of the defense" but defer to "whatever reasonable tactical and strategic guidance [Petitioner] gives.  I want him to be the boss, and I want to be the talker."  (RT 25.)  Petitioner agreed that that was the arrangement he desired.  (RT 25-26.)  The court then appointed standby counsel as co-counsel for Petitioner, but noted that Petitioner "remain[ed] in pro per."  (CT 476.)

The court discussed with Petitioner and co-counsel how the arrangement would work with regard to certain courtroom procedures.  Petitioner requested— and the court agreed—that only co-counsel would speak during jury selection.  (RT 26.)  With respect to any sidebars that might occur, Petitioner requested that he be given a listening device to hear what was being said between his co-counsel, the prosecutor, and the court, in light of the fact that he would not be permitted to walk around freely in the courtroom to approach the bench.  (RT 28-30.)   The court indicated that it did not have the "capability to do that."  (RT 30.)  Instead, pursuant to the suggestion of co-counsel, the following solution was proposed:

> [The Court]:  Do you agree that unless there's an objection by you or
> an affirmative indication to the court by either you or
> [co-counsel] about addressing something at sidebar, do

---

[6]  Although the terms "standby counsel" and "co-counsel" are often used interchangeably, they actually refer to two distinct situations:  "standby counsel" refers to the situation where a pro se defendant is given the assistance of advisory counsel who may take over the defense if, for some reason, the defendant becomes unable to continue; in a "co-counsel" situation, the attorney may participate directly in the trial proceedings with the defendant.  *See Locks v. Sumner*, 703 F.2d 403, 407 & n.3 (9th Cir. 1983).

|   |   |
|---|---|
| 1 | you agree that [co-counsel] can approach without you being present and address matters at sidebar on your behalf? |
| 2 | |
| 3 | |
| 4 | [Petitioner]:   I do agree—well, would I have the ability to make an objection later if there's something I perceive is not being—that I'm not able to address at sidebar because I'm not present? |

1
2
3
    you agree that [co-counsel] can approach without you being present and address matters at sidebar on your behalf?

4   [Petitioner]:  I do agree—well, would I have the ability to make an
5   objection later if there's something I perceive is not
6   being—that I'm not able to address at sidebar because I'm not present?

7   [The Court]:  Well, not necessarily.  It may be something the court needs to
8   make a ruling on at that time.  So it would involve to some
9   extent your waiving your presence during that proceeding and
    agreeing for that purpose [co-counsel] can represent you.

10
11  [Petitioner]:  Well, yeah.  I agree to that, yes.  Okay.

12  [The Court]:  Okay.  So, specifically, then, you agree that when
13  there's a sidebar discussion, for that purpose, you waive
14  your presence and you agree that [co-counsel] can
    represent you?
15  [Petitioner]:  Yes.

16  [The Court]:  And, [co-counsel], do you join?

17  [Co-counsel]: I join.  If it's something that requires his participation, I'll ask
18  you to exclude the jury and conduct it at sidebar.

19  [The Court]:  And I will do so.
20          The court requires the defense to give an
    affirmative indication that that's what you want to do.
21  You don't do that, then you're telling me you waived
22  your presence and you agree to the extent you're
    permitting [co-counsel] to actually represent you rather
23  than be your [co-counsel].  Do you understand and
24  agree to that?

25  [Petitioner]:  Yes.  Yes, Your Honor.
26  (RT 30-31; *see also* CT 980.)
27  ///
28

12

Thereafter, throughout the trial, Petitioner acted at all times as his own attorney with the assistance of co-counsel. After trial, Petitioner filed a motion claiming that the court "forced him to waive his *Faretta* rights to attend, listen, and speak at sidebar conferences." (RT 3305.) The court denied the motion, noting that Petitioner voluntarily "agreed to the procedure that was followed" regarding sidebars. (RT 3306.)

### 2.    *Federal Law and Analysis*

A defendant has an unequivocal right to represent himself in criminal proceedings. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This right "plainly encompasses certain specific rights to have his voice heard" and to "present his case in his own way." *McKaskle v. Wiggins*, 465 U.S. 168, 174, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Thus, a "pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id*. at 174. "[T]he *Faretta* right is eroded" when a court "effectively allows [advisory] counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance." *Id*. at 178.

However, "[o]nce a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *Id*. at 183. "A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense." *Id*. at 182; *see also Frantz v. Haley*, 533 F.3d 724, 745 (9th Cir. 2008) (en banc).

///

Petitioner argues that because he was personally excluded from participating in any sidebars with the trial court, his constitutional right to represent himself was violated. In *United States v. Fabricant*, 506 F. App'x 636, 639 (9th Cir. 2013), the Ninth Circuit addressed this claim in a similar factual situation. In *Fabricant*, the defendant alleged that his "co-counsel" violated his *Faretta* rights by "attend[ing] a sidebar conference alone." *Id.* at 639. The Ninth Circuit court rejected the claim, finding that Petitioner had waived his right to be present in light of the fact that he "was in court at the time," "had requested co-counsel," and agreed to a substantial role for co-counsel at trial. *Id.*

Here, Petitioner's waiver was even more explicit. Prior to trial, he agreed that co-counsel could represent him at any sidebars with the court without his presence. Petitioner's argument that he was forced into giving this waiver is unsupported and belied by the record. Petitioner actively sought the appointment of counsel to assist him with presenting his defense and readily gave up some control to co-counsel—i.e., in speaking to the jury and the court at sidebars. (*See* RT 30-31.) His request for a listening device was rebuffed because the court was not equipped for it. Petitioner has not rebutted this claim in any manner. Moreover, Petitioner's solemn declaration in open court that he was voluntarily waiving his right to be present during sidebars "carr[ies] a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Accordingly, the California courts did not make an unreasonable determination of facts or unreasonably apply the Supreme Court law of *Faretta* and *McKaskle* when it denied this claim. As such, habeas relief is not warranted.

## C.    Ground Three:  State Procedural Error

In Ground Three, Petitioner claims that the California Court of Appeal's June 2014 order denying his state habeas petition was improper because it did not specify which procedural rule was being applied to deny each of his claims. (Petition at 6.) Thus, he argues there was no "adequate and independent procedural

14

bar." (Petition at 6.) Petitioner has failed to state a cognizable claim for several reasons.

First, Petitioner's complaint primarily concerns whether the state appellate court followed its own state rules in denying habeas relief.[7] Federal courts may grant habeas corpus only if a petitioner's conviction or sentence is in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. *See Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998); *see also Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings."). Thus, in and of itself, this is not a claim for which the Court could grant relief.

Second, it is true that "a procedural default based on an ambiguous order that does not clearly rest on independent and adequate state grounds is not sufficient to preclude federal collateral review." *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996). This, however, is not an instance in which the Court is applying the state procedural rule to find that Petitioner's federal claims are barred from review. Respondent has not asked that any of Petitioner's claims be denied because they are procedurally defaulted in state court. (*See* Respondent's Answer at 15-16.) Rather, the Court herein has addressed all of his claims on their merits. Accordingly, any argument by Petitioner as to why the state court erred in denying his state petition on procedural grounds is immaterial. For this reason, too, the claim is not cognizable and must be denied.

---

[7] The California Court of Appeal denied the state petition, in part, because several of the claims "could have been, but were not, raised on appeal." (Lodg. No. 7.) In doing so, the appellate court cited several state cases—*In re Harris*, 5 Cal.4th 813, 826 (1993); *In re Clark*, 5 Cal.4th 750, 765 (1993); and *In re Waltreus*, 62 Cal.2d 218, 225 (1965)—but did not specify which citation applied to which claim. (See Lodg. No. 7.)

### D.   Ground Four:  Ineffective Assistance of Trial Counsel

In Ground Four, Petitioner claims that trial counsel was ineffective for failing to challenge the validity of his prior "strike" convictions used to enhance his sentence under California's Three Strikes law.  (Petition at 6.)

#### 1.   *Background*

Prior to trial, while acting in pro per, Petitioner filed a motion to strike his prior serious felony convictions from being used to enhance his sentence under the Three Strikes law, arguing that it violated ex post facto laws.  (*See* CT 261-63.) Prior to a court ruling, Petitioner voluntarily withdrew the matter.  (RT D15-D17.)

Later, after the close of the case and while the jury was deliberating, Petitioner, while still representing himself and being assisted by "co-counsel," agreed to waive his right to a jury trial on all seven alleged prior "strikes."[8]  (*See* RT 2101-08.)  After being found guilty of the underlying offenses, a bench trial was scheduled to determine the validity of the prior "strikes."  (CT 1093; RT 2115.)  On the date of the bench trial, Petitioner moved for a continuance to challenge the "validity of the principle case that contains the priors."  (RT 3002.)  Although the court found the motion to be untimely, it allowed Petitioner to file any motions challenging their validity prior to his sentencing date.   (RT 3002, 3045.) Thereafter, Petitioner, again representing himself, filed a "Motion to Dismiss or Strike Alleged Prior," arguing that his 1986 plea agreement was invalid.  (CT 1169-94.)  That motion was denied by the trial court.  (CT 1202; RT 3310-11.)

#### 2.   *Federal Law and Analysis*

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding.  *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).  Generally, to establish a claim of ineffective

---

[8] Prior to the waiver, the trial court explained in detail the prior conviction allegations and the potential punishment if they were to be found true. (RT 2105-06.)

assistance of counsel, Petitioner must prove: (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The Sixth Amendment does not, however, "protect a pro se defendant from his own shortcomings." *Layton v. Martel*, 2014 WL 773450, at *29 (C.D. Cal. Feb. 20, 2014). In choosing to represent himself at the sentencing hearing, Petitioner forfeited any claim "that the quality of his own defense amounted to a denial of 'effective assistance of counsel'" as guaranteed under the Constitution. *Faretta*, 422 U.S. at 834 n.46; *see also Williams v. Stewart*, 441 F.3d 1030, 1047 n.6 (9th Cir. 2006) (finding that a defendant who elects to represent himself cannot have a "free-standing claim" of ineffective assistance of counsel).

Further, there is no federal constitutional right to advisory, standby, or co-counsel. *See United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994) ("A defendant does not have a constitutional right to 'hybrid' representation."); *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) ("A criminal defendant does not have an absolute right to both self-representation and the assistance of counsel."). Nor does the appointment of such hybrid forms of assistance vitiate a defendant's right to self-representation. *See McKaskle*, 465 U.S. at 176-77. Therefore, having chosen to proceed pro se and absent a constitutional right to the assistance of advisory counsel, Petitioner's claim fails as a matter of law. *See, e.g., United States v. Cochrane*, 985 F.2d 1027, 1029 (9th Cir. 1993) (rejecting as a matter of law that "standby counsel appointed to assist [the defendant]" provided ineffective assistance of counsel); *Saenz v. Van Winkle*, 2014 WL 2986690, at *2 n.2 (D. Ariz. Jul. 2, 2014) ("If a defendant elects to waive counsel, but the court nonetheless appoints stand-by counsel or advisory counsel, there is no constitutional right to effective assistance from 'waived' counsel.").

17

Finally, the Court notes that, even were Petitioner able to advance a claim of ineffective assistance of counsel for co-counsel's failure to challenge Petitioner's priors,[9] he has not demonstrated any prejudice.  Despite Petitioner's conclusory arguments to the contrary, he has not shown that any of the prior "strikes" were invalid or unlawfully applied to his case.  In short, he has not put forth any persuasive legal argument as to how a challenge to his prior offenses by counsel would have likely affected the outcome of his case.  Without a showing of prejudice, any claim of ineffective assistance of counsel claim necessarily fails.  *See Strickland*, 466 U.S. at 687.[10]

**E.    Ground Five:  Ineffective Assistance of Appellate Counsel**

Finally, in Ground Five, Petitioner complains that appellate counsel was ineffective for failing to raise a claim regarding trial counsel's purported ineffectiveness in not objecting to the use of Petitioner's prior offenses as "strikes." (Petition at 6.)

A criminal defendant enjoys the right to the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 391-97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  The standard for determining whether trial counsel rendered ineffective assistance applies equally to determining whether appellate counsel rendered ineffective assistance.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  To establish a claim for ineffective assistance of appellate

---

[9] Although the Ninth Circuit has not foreclosed the idea that a pro se defendant could challenge the assistance of standby counsel in some circumstances (*see Cochrane*, 985 F.2d at 1029 n.1), there is no applicable United States Supreme Court authority upon which Petitioner could rest such a claim.

[10] In his Traverse, Petitioner attempts to raise other claims of deficient performance by his "co-counsel."  (*See* Traverse at 34-35.)  These claims are not properly raised for the first time in a traverse.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief.").  Moreover, they are conclusory and would fail for the same reasons outlined above.

counsel, Petitioner "must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal." *Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014) (citing *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989)).

Appellate counsel has no constitutional duty, however, to raise every issue where, in the attorney's judgment, the issue has little or no likelihood of success. *Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997). In fact, "the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001) (internal quotations omitted). Consequently, a petitioner is entitled to relief only if counsel failed to raise a "winning issue" on appeal. *Id.* at 1033-34.

Here, the Court has already determined that Petitioner, who represented himself throughout the entire proceeding, did not receive ineffective assistance of counsel as guaranteed under the Constitution. Because there was no reasonable likelihood that this claim would have prevailed on appeal, Petitioner cannot show that appellate counsel was deficient in failing to raise the issue or that he was prejudiced from appellate counsel's failure to do so. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (holding that failure to raise untenable issues on appeal does not fall below *Strickland* standard). Accordingly, this claim fails to merit relief.

///

///

///

///

19

## V.   <u>RECOMMENDATION</u>

For the reasons discussed above, IT IS RECOMMENDED that the District Court issue an Order (1) accepting and adopting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:  March 28, 2017

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE</u>

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.